WAR MEMORIAL HOSPITAL OF DISTRICT NO. 1, PARK COUNTY, WYOMING: CROWN HILL CEMETERY OF DISTRICT NO. 1, PARK COUNTY, WYOMING, and FIRE PROTECTION DISTRICT NO. 1, PARK COUNTY, WYOMING

*Plaintiffs,*

vs.

BOARD OF THE COUNTY COMMISSIONERS OF PARK, WYOMING: ELNORA HANCOCK, CHARLES GAWTHROP, L. A. BUCHANAN, RUSSELL FRANKLIN, and VERN O. ASAY,

*Defendants.*

(No. 2655; January 25th, 1955; 279 Pac. (2d) 472)

372

374

For the plaintiffs the cause was submitted upon the brief of Lewis and Copenhaver of Powell, Wyoming, and Jerry W. Housel of Cody, Wyoming, and oral argument by Mr. Ross D. Copenhaver and Mr. Jerry W. Housel.

No appearance was made for defendants.

## OPINION

PARKER, District Judge.

The case before us is one on reserved constitutional questions, involving Article 15, Section 6 of the Con-

stitution of Wyoming, reading as follows: "No incorporated city or town shall levy a tax to exceed eight mills on the dollar in any one year, except for the payment of its public debt and the interest thereon."

There are three plaintiffs in the case. We refer to them for brevity's sake as the Hospital District, the Cemetery District and the Fire Protection District. The Hospital and Cemetery Districts were organized on or about September 6, 1949, pursuant to Chapter 58 of the Session Laws of Wyoming, 1949. The Fire Protection District was organized on or about December 6, 1948, pursuant to Sections 45-101 to 45-109, Wyoming Compiled Statutes, 1945, as amended by Chapter 147 of the 1953 Session Laws of Wyoming. These statutes permit each of the districts to levy a tax not to exceed three mills on the dollar in any one year. All of the districts here involved embrace the same territory, of some 403 square miles, and include the town of Powell and territory immediately surrounding it on all sides. They each have a separate governing board. Each of the districts levied a tax, pursuant to legislation, less than three mills, in 1952, and requested the Board of County Commissioners of Park County (wherein the districts are located) to spread these levies on the tax rolls. The board refused to do so on account of the fact that the town of Powell during that year made a levy for town purposes of eight mills on the dollar. The board took the position that the levy made and requested by the three districts involved herein could not be made unless the town of Powell would reduce the eight mills by the amount of the levies made and requested by the three districts here involved. The questions before us are whether or not the three districts respectively may make and request a levy up to three mills on the dollar in any one year notwithstanding the fact that the town of Powell

may make and request a levy of eight mills on the dollar as mentioned in Section 6, Article 15 of the constitution of this state. After issues were formed in the case, the court, upon request of counsel, submitted to this court the following constitutional questions:

"1. Does Section 6 of Article 15 of the Constitution of the State of Wyoming prevent the Board of County Commissioners of the County of Park, Wyoming, from levying a valid tax of not exceeding three mills (including any levy for retirement of debt and payment of the interest thereon) for the operation and maintenance of War Memorial Hospital District No. 1, Park County, Wyoming, even though such a tax, when combined with the general levy of the Town of Powell, Wyoming, exceeds eight mills upon the taxable property within the said Town of Powell?

"2. Does Section 6 of article 15 of the Constitution of the State of Wyoming prevent the Board of County Commissioners of the County of Park, Wyoming, from levying a valid tax of not exceeding three mills (including any levy for retirement of debt and payment of the interest thereon) for the operation and maintenance of Crown Hill Cemetery of District No. 1, Park County, Wyoming, even though such a tax, when combined with the general levy of the Town of Powell, Wyoming, exceeds eight mills upon the taxable property within the said Town of Powell?

3. Does Section 6 of Article 15 of the Constitution of the State of Wyoming prevent the Board of County Commissioners of the County of Park, Wyoming, from levying a valid tax of not exceeding three mills (including any levy for retirement of debt and payment of the interest thereon) for the operation and maintenance of Fire Protection District No. 1,

Park County, Wyoming, even though such a tax, when combined with the general levy of the Town of Powell, Wyoming, exceeds eight mills upon the taxable property within the said Town of Powell?"

It is stated by McQuillin, Municipal Corporation, 3rd Ed., Vol. 1, p. 510 et seq., as follows: "Subject to constitutional restraints, the legislature may create any kind of corporation it deems essential for the more efficient administration of civil government, and it may confer on it such powers and functions as it deems necessary and proper for the administration of the particular powers which the corporation may be authorized to exercise." The text is supported by many decisions including City of Aurora v. Aurora Sanitation Dist., 112 Colo. 406, 149 P.2d 662, Lehi City v. Meiling, 87 Utah 237, 48 P.2d 530, Henshaw v. Foster, 176 Cal. 507, 169 P. 82, 84. These authorities hold that the public corporation so created may levy a tax and create bonded indebtedness in the district separate and apart from any within the municipality included therein. The case of Lehi City v. Meiling, supra, sets out many kinds of districts coming within the rule so stated, such as irrigation districts, flood control districts, reclamation districts, utility districts, sanitary districts, tunnel districts, health districts, water improvement districts, highway districts, port districts and bridge districts. This court held in Sullivan v. Blakesley, 35 Wyo. 73, 246 P. 918, that the legislature has the right to establish irrigation districts.

We have no fault to find with the general rule, if properly applied. The trouble in this case is that counsel for the districts lay all the stress on the power of the legislature to create public corporations, but disregard that part of the rule which states that it is "subject to constitutional restraints."

Section 6, Article 15 of the constitution must be given a reasonable interpretation. It is quite apparent the framers of our constitution thought that a direct tax of eight mills against the property of the city or town (together with indirect taxes permitted) would and should suffice for the payment of expenses incurred in performing the governmental functions essential to the convenience, safety and happiness of the citizens of the municipality, rather than the welfare of the general public. It is hardly probable they contemplated that this limitation should be evaded either directly or indirectly and that a direct tax greater than eight mills could be imposed upon such property for the performance of these functions. This provision itself does not say that the eight mills should suffice for the performance of *only part* of these functions. The only reasonable interpretation would seem to be that this direct tax (together, as stated, with indirect taxes) should suffice for the performance of *all* such functions. Hence it would seem that the only doubt that could arise in the case is as to what particular functions were contemplated. We have before us a hospital district and a cemetery district, permitting the establishment of hospitals and providing for cemeteries. Were these contemplated as essential governmental functions of the city or town? We find in this state county hospitals and private hospitals. We also find public cemeteries and private cemeteries. We are in doubt on the point. To establish and maintain these is not, we think, a distinctive governmental function of the city or town. Courts will not declare a statute unconstitutional unless the unconstitutionality is clear. While towns may have the power to establish hospitals and cemeteries, we hardly think that the establishment thereof should be forced upon them, as an essential governmental function, unless perchance, pursuant to a distinct statute. We do not have such a

statute. We conclude, accordingly, that the taxing power of the hospital district and the cemetery district is not affected by the constitutional limitation here in question and we answer the first and second questions submitted to us by "NO."

We think the situation is different when we come to consider the Fire Protection District. Up to the time that the Fire District here in question was organized, the town of Powell paid the expenses of its fire protection out of the direct tax of eight mills (and other available revenue) but after the district was organized, it thought that it could abandon its obligation in connection with fire protection, leave it to the district, and devote the entire eight mills to other purposes.

We think that fire protection is a primary governmental function which every city *must* perform. "Governmental functions are those conferred or imposed on the municipality of a local agency of limited and prescribed jurisdiction, to be employed in administering the affairs of the state, and promoting the public welfare generally. While in a certain sense any municipal function might be regarded as governmental, when properly applied the term 'governmental functions' should be limited to legal duties imposed by the state upon its creature, which it may not omit with impunity but must perform at its peril. * * * All functions of a municipal corporation, not governmental, are strictly municipal. Municipal functions are those granted for the specific benefit and advantage of the urban community embraced within the corporate boundaries. Logically all those are strictly municipal functions which specially and peculiarly promote the comfort, convenience, safety and happiness of the citizens of the municipality, rather than the welfare of the general public." 62 C.J.S., Municipal Corporations, § 110, pp. 244,245; Robbins v. City of Sheffield, 237 Ala. 674, 188

So. 874, 878; Krantz v. City of Hutchison, 165 Kan. 449, 196 P.2d 227, 231. See also McQuillin, Municipal Corporatitons, 2nd Ed., Vol. 6, Revised, § 2814, p. 1116, which states: "* * * the operation and maintenance of the fire department and fire fighting for the public welfare is regarded by the general current of judicial decisions, and adhered to by the latest cases, as a governmental function * * *." (3rd Ed., Vol. 18, § 53.52)

Although factual circumstances may vary a city's obligation and there is no rigid rule for classifying functions, we are impressed with the statement in Krantz v. City of Hutchison, supra, "Among typical governmental functions of a municipality may be mentioned: assessment and collection of its proportion of the state tax, police regulations, suppression of crime, protection of the public health, the exercise of eminent domain, *operating a fire department,* administration of justice." (Italics supplied.)

In passing, it may be noted that the general philosophy employed by the courts in analyzing and delineating a city's obligatory legal duties applies peculiarly to urban communities and not to counties or other political subdivisions.

Fire protection is a typical governmental function which a city or town may not avoid. If any municipal function was contemplated by Section 6, Article 15 of the constitution, fire protection would seem to be one of the foremost. It is hardly reasonable to say that the constitution contemplates that this function may be performed by a direct levy (made by a fire district) over and above the eight mills mentioned therein. We should not too easily permit an evasion of the constitutional limitation, even though it be by an indirect method. Suppose that pursuant to legislation additional districts were established to take over

other municipal functions, leaving the town but a single function. Could the eight mills still be levied for that one and single purpose? That, we think, would be unreasonable. We are supposing an extreme case, it is true. Nevertheless, the test would seem to be apropos.

In Lehi City v. Meiling, supra, the legislature had provided for the establishment of a metropolitan water district which included a large territory and the functions of which could hardly be performed by the city of Lehi. The court sustained the organization of the district, although two justices dissented. The court held that the bonded indebtedness and resulting taxation was not on the property of the municipality but that of the district. The court significantly adds this: "There need be no friction between the two but the closest cooperation is contemplated and should result." In the case at bar, there can, of course, be no cooperation between the fire district here involved and the town of Powell except by the town of Powell bearing its proper proportion for fire protection and bearing the expense out of the eight mills mentioned in Section 6, Article 15 of the constitution. In the Utah case, supra, Justice Wolfe wrote an elaborate concurring opinion, holding that it is permissible to create a separate water district when the undertaking is of such magnitude that it cannot be performed by any one city. Speaking of a constitutional provision like Section 37, Article 3 of our constitution, he stated on page 548 as follows:

"It is perhaps true that no public agency could be given power by the Legislature to levy taxes against property in a city or town for the purpose of performing the very municipal functions which said city or town was doing or could do. Thus, it may be that section 29 prohibits an outside public agency from levying taxes for the performance of any muni-

cipal function or to prohibit it from performing any such municipal function as the city or town itself was doing or was capable of doing for that city or town—at least as far as its governmental powers are concerned. It is questionable whether an agency can be constitutionally created to go into a city and tax and run a police department or even to do for that city alone the proprietary functions which said city was doing or was capable of doing. That is not the same as saying that an entity could not be formed to do that which the city could not do because of the magnitude or character of the project or because it was such a project which must necessarily serve more than one city."

We are inclined to believe that the duty of fire protection is on the same plane as running a police department and we have quoted from the eminent jurist merely and solely for the purpose of emphasizing that fire protection is preeminently a governmental function which the city or town is obliged to perform. It would seem that the legislation permitting the town of Powell to levy a direct tax of eight mills must be construed in pari materia with the fire protection statute and the constitutional limitation here involved, and that the people of the town of Powell did in fact recognize that fact when they voted to become part of the fire protection district. Hence it would seem to be clear that the town of Powell should limit its levy for direct taxes, and should pay its proportion of fire protection out of the eight mills mentioned in Section 6, Article 15 of the constitution; that it should fully cooperate with the fire protection board, as for instance concurring in the action of the board if necessary to obviate any possible constitutional objection in so far as the town is concerned. We are unable to see how we can hold otherwise, unless we are willing to concede, as we

are not at this time, that the constitutional limitation here involved may easily be evaded by creating a district. The town is hardly in position to complain of this holding, since it is merely left on the same plane with other municipalities in this state. There is no impelling reason, of which we are aware, why it should be in possession of any special privilege over and above that possessed by other cities and towns in this state, or why it should be permitted to burden its citizens indirectly with a greater direct tax than that permitted to other municipalities.

The categorical answer to the third constitutional question submitted to us must, accordingly, be "YES." But the court in making its order pursuant thereto should make it in accordance with what we have said herein.

RINER, C. J., AND BLUME, J., concur.