Board of the County Commissioners of the County of Albany, and James D. Gay, individually and as County Commissioner, George W. Dodge, individually and as County Commissioner, and Ralph E. Buescher, individually and as County Commissioner,

*Appellants*

(Defendants below)

vs.

Bryan White, Ray Bottom, S. W. Vogel, Noel Hall, Arthur McKechnie, Jr., and William W. Whitney,

*Appellees*

(Plaintiffs below)

(No. 2856; February 10, 1959; 335 Pac. (2d) 433)

See also, 313 P.2d 484.

For the appellants the cause was submitted upon the brief and also oral argument of Lynn Rees of Laramie, Wyoming, County and Prosecuting Attorney of Albany County, Wyoming.

For the appellees the cause was submitted upon the brief of Ellery, Gray and Hickey of Cheyenne, Wyoming, and oral argument by J. J. Hickey.

Heard before Blume, C. J., and Harnsberger, J., and Sheldon, D. J.

426

## OPINION

District Judge Sheldon delivered the opinion of the court.

This is an appeal from a judgment of the district court permanently enjoining defendants from entering into any contract or contracts for the sale of proposed recreational facilities bonds or from issuing bonds for the purpose of raising funds for recreational facilities.

A bond election was called and held in Albany County in accordance with the provisions of Ch. 28, Art. 2, W.C.S. 1945 (1957 Cum. Pocket Supp.). The question

submitted to the voters as set forth in the official ballot was as follows:

## "ALBANY COUNTY, WYOMING RECREATIONAL FACILITIES BOND ELECTION HELD AUGUST 21, 1956

## "OFFICIAL BALLOT

"(Instructions to the voter)

*"The Elector shall prepare his ballot by marking a cross (x) in the square opposite the words which express his vote.*

" 'Shall the Board of County Commissioners of Albany County, Wyoming, be authorized to issue coupon bonds of said County [in] the principal amount of $250,000.-00 bearing interest at a rate not exceeding 4% per annum, payable semi-annually, said bonds to be due and payable serially within 10 years after their date in amounts which will require substantially equal annual tax levies for principal and interest during the period, for the purpose of constructing and equipping a public building and acquiring, improving and developing pleasure grounds and recreational facilities for the use of the inhabitants of said County?'

-----------------------------------------------------------------------------

"FOR RECREATIONAL FACILITIES BONDS : :

-----------------------------------------------------------------------------

"AGAINST RECREATIONAL FACILITIES
BONDS                                    : :"

-----------------------------------------------------------------------------

A majority of both property owners and nonproperty owners voting at said election voted for said bonds. The regularity of the procedure for holding a bond election is not questioned.

The defendants rely upon the provisions of Ch. 26, Art. 8, W.C.S. 1945, as amended by Ch. 150, S. L. of Wyoming, 1951, for their authority to issue said bonds, which provide in part as follows:

"26-801. The Board of County Commissioners * * * is authorized and empowered * * * to acquire lands and other property for the purposes of fair grounds, airports, parks and pleasure grounds; to maintain, improve and develop and to construct, maintain and operate a public auditorium, athletic fields, civic center or other community building * * *.

"26-802. For the purposes of this Act, the Board of County Commissioners may levy taxes, issue bonds or incur indebtedness in like manner as is or may be authorized by law for other county purposes.

"County Fair Fund

"(A). The taxes authorized by Section 26-802 of this Act shall be levied and collected at the same time in the same manner as other county taxes of such county are levied and collected, and the whole amount of such taxes so collected, together with any and all other monies received from the sale of bonds, donations or other sources for such purpose, shall be set aside and shall be designated the County Fair Fund, which fund shall be expended only by the authority and in the manner as hereinafter provided."

The judgment in this case recites that a permanent injunction should issue for the following reasons:

"1. That the Chapter 150 of the 'Session Laws of Wyoming for 1951' does not authorize on its face the issuance of bonds and a levy of taxes for the payment

of such bonds and the interest thereon and such bonds are therefore illegal and void, for the reason that the said Chapter 150 does not, by reference or otherwise, fix or set out the terms, conditions and execution of bonds, payment, interest rate, and sale price as is required by Article Fifteen (15), Section Thirteen (13) of the Constitution of the State of Wyoming."

The reason for this legal construction is not apparent to this court. Art. 15, § 13, of the Constitution of Wyoming provides:

"No tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

Ch. 150, S. L. of Wyoming, 1951, aforesaid expressly and in plain and unambiguous language authorized the county commissioners to "levy taxes, issue bonds or incur indebtedness" for the purpose or object stated and further provided for the moneys so received to be set aside in the County Fair Fund and expended only by the authority and in the manner therein provided.

## I

Plaintiffs' counsel contend that the reference in the law to levying taxes and issuing bonds "in like manner as is or may be authorized by law for other county purposes" is too indefinite and uncertain to determine the legislative intent and therefore no tax can be levied "in pursuance of law" as required by the constitutional provision aforesaid. Their argument is based on the contention that the laws of this State provide four methods for issuing bonds for county purposes as set forth in Ch. 28, W.C.S. 1945, to wit: Art. 2 pertaining to court houses and jails and roads, highways, bridges,

viaducts and subway construction and improvement bonds; Art. 3 pertaining to bonds for funding or re-funding any county indebtedness at a lower rate of interest; Art. 4 pertaining to refunding coupon bonds to be issued to redeem previous bonds at maturity when no funds are otherwise available; and Art. 5 pertaining to highway viaducts or subway bonds; that these provisions for issuing such bonds vary consider-ably in material respects, particularly with reference to the maturity dates and redemption features of the respective bond issues authorized, and in the absence of a designation by reference to a particular one of the methods for issuing bonds, the statute in question is left without necessary provision for terms, payment, interest rate, sale price and conditions for the execu-tion of the bonds.

We know of no legal requirement that a law dele-gating authority from the State to counties to issue bonds must necessarily provide for the terms, condi-tions, payment, interest rate or sale price of the bonds. Counsel have cited no authorities in support of their contention in this regard and we have been unable to find any. To the contrary, a review of the text writ-ings on the general subject of public securities and obligations leads to an opposite conclusion. Constitu-tional and general statutory provisions relating to public indebtedness are usually restrictive in char-acter, designed to limit the powers of the State in its inherent power as a sovereignty to make contracts with reference to its credit. In the absence of such restriction, the power to bond would be unlimited and such unlimited authority could be delegated to the sub-division of the State. The evils which resulted from the frequent grant by many of the state legislatures of such unlimited powers to political subdivisions have led the people in most states to adopt various constitu-

tional limitations safeguarding and restricting the issuance of bonds. Such constitutional provisions are self-executing and mandatory and require no supplemental legislation to make them effective. Likewise additional limitations may be enacted by the legislature and all such restrictions or requirements must be strictly complied with. See 43 Am.Jur. Public Securities and Obligations § 16, p. 282, § 21, p. 287 and § 23, p. 289.

In this case the statutory delegation of bonding authority to the board of county commissioners carries with it the requirement that the bonds be issued "in like manner as is or may be authorized by law for other county purposes." Is this requirement so general or ambiguous that it cannot be complied with in view of the four statutory procedures in effect relating to bond issues for county purposes? We think not. The provisions of Art. 3 and Art. 4, supra, pertaining to redemption bonds, are obviously not applicable to the proposed bond issue in this case. Strict compliance by the defendants with the provisions of either Art. 2 or Art. 5, supra, we think, will meet the legislative requirement that the bonds be issued in like manner as is or may be authorized by law for other county purposes. The court, in construing the language of this requirement, must assume that when the legislature amended and re-enacted § 26-802, W.C.S. 1945, by Ch. 150, S. L. of Wyoming, 1951, it did so with full knowledge of the existing condition of the law with reference to issuing bonds for county purposes. See Civic Ass'n of Wyoming v. Railway Motor Fuels, 57 Wyo. 213, 116 P.2d 236.

In the absence of a reference to a particular bonding procedure, the legislature intended that the board of county commissioners should have the right and op-

tion to select and follow either of the statutory requirements then in effect and otherwise applicable to the proposed bond issue.

An examination of the provisions of Art. 2 and Art. 5, supra, discloses no material variance between them which renders the foregoing statutory construction inoperative. In fact, many requirements in both statutes are couched in identical language. Both provide that the board of county commissioners shall cause to be levied annually upon all taxable property in the county, in addition to other authorized taxes, a tax in a sum sufficient to pay the interest on bonds as the same becomes due and to redeem the bonds upon maturity, said tax to be levied and collected in the same manner as other taxes in said county. This delegation of taxing authority is sufficient under either statute to meet the requirements set forth in Art. 15, § 13, of the Wyoming Constitution.

## II

The constitutionality of § 26-802, W.C.S. 1945, as amended by Ch. 150, S. L. of Wyoming, 1951, is further questioned on the grounds that it attempts to incorporate matters of substance by general reference in violation of Art. 3, § 26, of the Wyoming Constitution, which provides as follows:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended, or extended shall be re-enacted and published at length."

So-called reference statutes are generally recognized as a valid method of legislation and are frequently used to avoid encumbering the statute books by unnecessary repetition, subject, however, to constitution-

al limitations. The constitutions of Alabama, Arkansas, Colorado, Kentucky, Montana, New Mexico, North Dakota, Oklahoma and Pennsylvania contain provisions similar to the Wyoming constitutional limitation above with reference to the phrase "or the provisions thereof extended by reference to its title only." In the case of State v. Armstrong, 31 N.M. 220, 243 P. 333, the Supreme Court of New Mexico makes an extensive analysis of the court decisions from these jurisdictions construing this limitation. Without exception, it has been held that this limitation does not apply to statutes which refer to existing laws merely for the purpose of pointing out procedure in executing powers which the statute itself, original in form by its own language, grants, and enforcing rights or discharging duties created or imposed by such statutes. On the other hand, it is generally held in these jurisdictions that reference to existing laws for the determination of positive and substantial rights thereby conferred or taken away is prohibited. See also 50 Am.Jur Statutes § 215, p. 195, and 82 C.J.S. Statutes § 72b(3), p. 129.

The plaintiffs contend in substance that the terms of the bonds, the manner of redemption, the manner of payment, the amount of taxes and the time and method of levying them are matters of substantive law creating, defining and regulating positive and substantial rights which can be determined only by reference to existing laws. This court is unable to sustain this contention. The positive and substantial right involved here is the right vested in the defendant Board of County Commissioners to issue bonds for the purposes stated. This right is positively and specifically granted in so many words by the statute in question. It is not necessary to refer to any other law to determine what right is granted, but the exercise of such right must be in accordance with all constitutional and statutory

limitations and procedures applicable thereto, whether specifically referred to in the statute or not. Thus, the indebtedness incurred cannot exceed two percentum of the assessed valuation of taxable property in the county, and the proposal to create such debt must be submitted to a vote of the people in accordance with Art. 16, §§ 3 and 4, of the Wyoming Constitution. The proceedings for holding a bond election are prescribed by general law Ch. 31, Art. 6, W.C.S. 1945, and must be complied with. Art. 2 and Art. 5, supra, fixed the maximum interest rate and maturity dates for county bonds and prescribed the procedure to be followed in selling the same, and Ch. 32, Art. 5, W.C.S. 1945 (1957 Cum. Pocket Supp.), prescribes the procedure to be followed by the counties in assessing, collecting and distributing taxes. These laws prescribe the conditions under which and the form and procedure by which the rights to issue bonds may be effected, but they do not define the right nor do they create any additional positive or substantial rights in relation thereto. When a county exercises its right to sell bonds, the terms thereof, their amount, due date and interest rate are determined largely by the conditions of the bond market at the time of sale within the limits of the procedural law applicable thereto. In turn, the taxes to be levied for repayment of principal and interest due under said bonds can only be determined after the bonds are sold. The bonds, once legally sold, vest in the purchaser the positive right to repayment of principal and interest in accordance with the terms and conditions of the bonds, but this right stems from the original grant of authority to the county to issue the bonds. The enforcement of this right in case of default involves a reference to different procedural laws than those listed above.

Reference statutes similar to the one in question

here have generally been upheld in those jurisdictions having a constitutional limitation similar to ours. The following are a few cases in point:

In the case of In re Opinion of the Justices, 262 Ala. 345, 81 So.2d 277, 280, it was held that a proposed law providing that " 'all of the provisions of the revenue laws of the State of Alabama applying to or with reference to the enforcement of liens for license taxes due to the State of Alabama shall apply fully to the collection of the taxes levied herein' " did not violate the constitutional provision of extending laws by reference to title only.

In the case of Byrd v. Short, Ark., 307 S.W.2d 871, 872, the Supreme Court of Arkansas in reviewing a statutory provision that " 'the general election laws, insofar as applicable, shall apply to school elections' " held that "It is also settled that such an adoption of other laws by reference does not infringe the constitutional provision against the extension of a statute by reference to its title only."

In the case of Riddell's Administrator v. Berry, Ky., 298 S.W.2d 1, 4, the Court of Appeals of Kentucky, in construing a provision of the Workmen's Compensation Law, KRS 342.001 et seq., which made employers liable for injury or death of minors employed " 'in willful and known violation of any law of this state regulating the employment of minors' " held that the Compensation Act adopted the Child Labor Act, KRS 339.210 et seq., as a part of it and that the two statutes must be read together.

In the case of In re Heiman's Will, 35 N.M. 522, 2 P.2d 982, 984, the Supreme Court of New Mexico upheld the statutory provision that " ' 'Appeals from the

judgment of the probate court shall be allowed to the district court in the same manner, and subject to the same restriction as in case of appeals from the district to the supreme court' " as an adoption by reference of procedural matter and effective as to the law in force when the action or proceedings in question is taken.

In the case of State ex rel. Berthot v. Gallatin County High School Dist., 102 Mont. 356, 58 P.2d 264, 266, a statute providing for emergency relief by creation of high school districts and adoption by reference of " 'all of the laws of this state governing the issuance and sale of bonds by school districts, the levying of taxes for the payment of the principal and interest thereof' " did not violate the constitutional restriction against the revision, amendment or extension of the provisions of any law by reference to its title only.

In the case of Service Feed Company v. City of Ardmore, 171 Okl. 155, 42 P.2d 853, 856, it was held that the constitutional limitation has no application to legislation which affects remedies and methods of procedure alone, and a statute providing for foreclosure in district court of paving district liens " 'in manner and form as in case of sale of real estate under execution' " is procedural only.

In the case of Edwards v. City of Cheyenne, 19 Wyo. 110, 114 P. 677, 122 P. 900, this court upheld a general reference statute authorizing cities and towns to acquire land for construction and maintenance of waterworks in the same manner as provided by § 3872, W.C.S. 1910, although the constitutionality of the statute was not directly questioned.

We conclude, therefore, that the reference provisions of § 2 of Ch. 150, S. L. of Wyoming, 1951, does not violate the constitutional restriction against extending the provisions of any law by reference to its title only.

## III

It is urged that Ch. 150, S. L. of Wyoming, 1951, is void for the further reason that §§ 2 and 4 thereof purport to authorize the loaning of the county's credit for private purposes, in violation of Art. 16, § 6, of the Wyoming Constitution, which provides as follows:

"Neither the state nor any county, city, township, town, school district, or any other political sub-division, shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or corporation. The state shall not engage in any work of internal improvement unless authorized by a two-thirds vote of the people."

Section 1 of the Act in question authorizes and empowers the board of county commissioners to appoint a board of trustees to maintain, manage and conduct agricultural, industrial and other fairs and exhibitions, public parks and pleasure grounds upon and in connection with any properties owned, acquired by or over which the board of county commissioners has control; and § 4 of the Act provides that said board of trustees shall be composed of five competent citizens of the county, and when organized they shall file a certificate of their organization with the county clerk and the Secretary of State, whereupon the board of trustees automatically becomes a body corporate empowered to sue and be sued under the name and style of " 'Board of Trustees of ——————— County Fair

Association.'" This section also provides that the improvement, development and operation of the properties, activities and functions and control thereof and of such funds as are therein provided for from taxes, moneys received from the sale of bonds, donations and other sources shall be by said board of trustees. Plaintiffs' counsel conclude that such board of trustees, being a corporation separate and apart from the county, comes directly within the purview of said constitutional limitation. The authorities do not support this conclusion.

It is generally recognized and unquestioned in this case that the acquisition, development and operation of fair grounds, airports, parks, pleasure grounds, auditoriums, athletic fields, community centers and community buildings are proper governmental functions. Legislation creating special boards to administer like functions has been upheld, and such boards are regarded as either municipal agencies or separate municipal or quasi-municipal corporations operating as agencies of the State. See 62 C.J.S. Municipal Corporations § 646, p. 1332. Counsel recognize the plenary power of the legislature to create municipal corporations subject to constitutional limitations and cite the following authority which was recognized by this court in the case of War Memorial Hospital of District No. 1, Park County, v. Board of County Commissioners of County of Park, 73 Wyo. 371, 279 P.2d 472, 474, to wit:

"* * * 'Subject to constitutional restraints, the legislature may create any kind of corporation it deems essential for the more efficient administration of civil government, and it may confer on it such powers and functions as it deems necessary and proper for the administration of the particular powers which the corporation may be authorized to exercise.' [1 McQuillin, Municipal Corporations, 3d Ed., p. 510]* * *."

Counsel argue that the constitutional restrictions as referred to in the above reference include the provisions of Art. 16, § 6, aforesaid, which constitute a restriction against public financing of municipal and quasi-municipal corporations as provided for in this Act. The authorities hold, however, that this restriction is generally regarded as applicable only to private associations or corporations and not to agencies of government.

"Constitutional provisions prohibiting counties from * * * giving any money or property, or loaning their credit, to or in aid of any individual, association, or corporation are generally construed to relate to private enterprises." 20 C.J.S. Counties § 243, p. 1126.

In the case of War Memorial Hospital of District No. 1, Park County, v. Board of County Commissioners of County of Park, supra, this court upheld separate taxing authority on behalf of hospital and cemetery districts but recognized the constitutional limitation on taxation as applied to fire districts which include a city or town within the boundaries of the district.

We conclude, therefore, that public financing of the functions of the county fair board as authorized by Ch. 150, S. L. of Wyoming, 1951, is not prohibited by Art. 16, § 6, of the Wyoming Constitution.

## IV

It is contended by the plaintiffs that the election held August 21, 1956, approving the bonds in question was illegal and void because separate unrelated propositions were not presented individually to the voters and at least some of the propositions submitted are not authorized by Ch. 150, S. L. of Wyoming, 1951.

The purpose for which the bonds were to be issued, as disclosed by the resolution of the Board of County Commissioners calling for the election and as set forth in the official election ballot, was " 'constructing and equipping a public building and acquiring, improving and developing pleasure grounds and recreational facilities for the use of the inhabitants of said County.' "

The record does not disclose any other or further action taken by the commissioners to specifically define the nature of the proposed facilities to be acquired with the bond funds. The bond proposal is quite broad, but likewise the statutory power granted to the commissioners is quite broad in scope. We are not prepared on the basis of the record before us to hold that unrelated or unauthorized propositions are or were contemplated by the commissioners under this broad proposal.

We recognize the rule stated in the case of Stern v. City of Fargo, 18 N.D. 289, 122 N.W. 403, 26 L.R.A., N.S., 665, cited by counsel, to the effect that bond proposals covering two or more separate and distinct propositions should be submitted separately so that the voters may express their approval or disapproval as to each proposition, but we believe the rule to be too strictly construed in that case. There is a divergence of opinion among the courts as to what constitutes separate and distinct propositions. In the case of City of Oakland v. Thompson, 151 Cal. 572, 91 P. 387, the proposal to acquire several distinct parcels of land widely separated to be converted into separate parks was upheld on the theory that they constituted a single scheme and that it was unnecessary for each part and parcel of land to be voted on separately. A similar conclusion was reached by the court in State v. Dade County, 144 Fla. 448, 198 So. 102, regarding

the construction of two parks, the court holding that the general purpose was the same.

In the instant case, so long as the bond funds are to be used for facilities authorized by Ch. 150, S. L. of Wyoming, 1951, only one objective or general purpose is involved, even though two or more separate facilities may be contemplated. In this regard it is to be noted that the Act in question specifically leaves it to the discretion of the board of county commissioners which facilities are to be acquired, and the same legislature in Ch. 24, S. L. of Wyoming, 1951, authorlized the board of county commissioners to establish a system of public recreation and playgrounds, and to acquire, equip and maintain land, buildings and other recreational facilities. We find nothing in the law which contemplates that such a scheme or general plan for recreational facilities should be submitted to the voters for prior piecemeal approval.

It may justly be said that the Act in question does not authorize the construction of any and all types of public buildings, but it does authorize public auditoriums or other community buildings, and in the absence of any showing to the contrary, we must assume that the building proposal referred to in the ballot contemplates only the type of public building authorized by the Act. Likewise, the term "recreational facilities" is not specifically mentioned in the Act, but most, if not all, the facilities authorized are recreational in character, and we must assume that the commissioners intend to use the bond funds for such authorized facilities.

Defendants also raise the question as to whether or not bond money can be used to purchase equipment.

On the issues before us at this time, we see no reason to qualify the rule announced in Jewett v. School Dist. No. 25 in Fremont County, 49 Wyo. 277, 54 P.2d 546, to the effect that the power to erect should be construed as impliedly and necessarily including required equipment which becomes a permanent part of the building authorized to be constructed. Presumably, the rule would be extended to include parks or pleasure grounds, although the question is not presented for our consideration here.

In passing it should be noted that although the responsibility for the construction, maintenance and operation of the facilities is placed in the hands of the board of trustees, the designation of the particular facilities to be acquired lies solely within the discretion of the board of county commissioners, and such facilities can only be provided upon and in connection with properties owned, acquired or over which the board of county commissioners has control.

Because of the broad and varied nature of the various facilities authorized by this Act, it is imperative that the board of county commissioners in exercising its discretion should be specific to the extent that the trustees will know generally the location, nature, purpose and estimated cost of each facility so authorized, and such designation should be precise enough so that it can be determined that the same are within the purposes authorized by the Act. Undoubtedly, the better practice would be for the commissioners to make such designation prior to the bond election for the edification of the voters, but in the absence of such a statutory requirement we cannot say that it is mandatory in order to validate such an election.

# V

We find no merit in plaintiffs' contention that recreational facilities are a purely municipal function and that, therefore, the legislature is prohibited by Art. 3, § 37, of the Wyoming Constitution from delegating authority to a quasi-public corporation to perform such function. Recreational facilities are promoted and carried on by all levels of government, both state and national. We have national, state, county and municipal parks and pleasure grounds, national and state wildlife refuges, state and county fair and exhibition grounds, state, county and municipal stadiums and athletic fields, and so forth. Ch. 24, S. L. of Wyoming, 1951, specifically authorizes cities, towns, villages, counties and school districts to acquire and operate systems of public recreation and playgrounds, either independently or jointly. Ch. 59, S. L. of Wyoming, 1953, does not expressly or by implication repeal or limit the authority delegated by Ch. 24 aforesaid or any other grants of authority by the State as to recreational facilities, nor does it directly or by implication declare recreational facilities to be a strictly municipal function as contended for by counsel. The tax problem involved in the case of War Memorial Hospital of District No. 1, Park County, v. Board of County Commissioners of County of Park, supra, with reference to fire districts is not present in this case. County bonds for parks and pleasure grounds must be issued within the constitutional debt limit of the county, and annual taxes levied for recreational purposes must be included within the county's constitutional tax limit. The aforesaid constitutional provision is discussed at length in the case of Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P.2d 355, wherein a state statute authorizing cities to establish a board of public utilities was upheld in all of its provisions

analogous to the statute in question in this case; the functions of the board of trustees here is purely administrative and all powers of condemnation and taxation in relation to, and even the designation of, the recreational facilities authorized remains under the exclusive control of the board of county commissioners.

In conclusion, we uphold the constitutionality of the provisions of Ch. 150, S. L. of Wyoming, 1951, and find the ballot question submitted to the electors contained only one general proposition, although it encompassed more than one of the related facilities authorized by the statutes of this State.

The judgment of the trial court is, therefore, reversed and it is directed that the injunction enjoining defendants and appellants from entering into any contract or contracts for the sale of proposed recreational facilities bonds or from issuing bonds for the purpose of raising funds for recreational facilities be dissolved.

Reversed with directions.

Parker, J., not participating.