## FUHS v. SWENSON ET AL.

(No. 2228; November 24, 1942; 131 Pac. (2d) 333)

For the appellant there was a brief by *G. R. McConnell* and *Ray Dimmitt* of Laramie, and oral argument by *Mr. McConnell*.

For the respondent there was a brief by *Ewing T. Kerr,* Attorney General; *Harold I. Bacheller,* Deputy Attorney General; and *Arthur Kline,* Assistant Attorney General, of Cheyenne, and oral argument by *Mr. Kline.*

RINER, Chief Justice.

This case presents the question whether an award for the payment of a physician's bill for services amounting to $12.00 and a hospital bill for $7.00, incurred in connection with an injury sustained by one John Fuhs, an employee of the Wyoming Construction Company, shall be upheld under the provisions of the Wyoming State Constitution and the Workmen's Compensation Law of this commonwealth. The award was made by the district court of Albany County. No award was ordered for Fuhs, his disability prevailing for less than seven days. (W. R. S. 1931, Section 124-120, with subsequent amendments and especially that of Laws of Wyoming, 1939, Chapter 118, Section 3.)

The employee, John Fuhs, will hereinafter be designated as the "employee" or the "workman" or by his surname as may be found convenient. The Wyoming Construction Company for the sake of brevity will be subsequently mentioned as simply the "Company" or the "employer". It is the party seeking a review of the award and bringing the cause here by the direct method of appeal procedure.

The pertinent constitutional and statutory law aside

from that above cited and involved in this lawsuit may be cited as:

Section 4 of Article 10 of the Wyoming Constitution as amended, which provides in part:

"As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee."

Section 124-102 W. R. S. 1931, omitting material not essential to be considered now, reads:

"Compensation herein provided for shall be payable to persons injured in extra-hazardous employments, * * * * except in case of injuries due solely to the culpable negligence of the injured employes."

That part of Section 124-120 W. R. S. 1931, amended as above indicated:

"Each employee, who shall be injured in any of the extra-hazardous employments as herein defined, * * * * except in case of injuries due solely to the culpable negligence of such injured employee, shall receive out of the Industrial Accident Fund, compensation in accordance with the following schedule, and such right and payment shall be in lieu of and take the place of any and all rights of action against any employer contributing, as required by this chapter, to the Industrial Accident Fund in favor of any person or persons by reason of any such injuries or death."

And Section 124-117 W. R. S. 1931, as amended by Laws of 1937, Chapter 128, Section 6, which declares in part:

"For the purpose of encouraging care on the part of employers and thus decreasing accidents to employes, and to the end that each employer shall compensate all

injuries to the workmen of such employer and not those of other employers, the State Treasurer shall keep a separate account for each employer so contributing to said fund and shall charge against the account of each employer all warrants paid from the Industrial Accident Fund:

"(a) As awards for injuries to employes of such employer;

"(b) In payment of medical and surgical supplies and medical or hospital attendance of an employee of such employer."

It is conceded by both parties hereto for the purposes of this case that the employee was engaged in an extra-hazardous occupation. The district court aforesaid found, despite the contention of the employer to the contrary, that "the accident was not due solely to the culpable negligence of said employee," and that the contention aforesaid was "the only defense presented" against making the award here in question. In view of the findings of the district court, the facts we shall consider at this time in reviewing the award thus made are substantially these:

The employee was a young married man, with a wife and a two and one-half months old child, and on June 13, 1941, was engaged in working as a grease man on machinery of the Company used in highway construction near Buford, Wyoming. On the date last mentioned his employment required him to put Diesel fuel into the tank of a caterpillar tractor engine about nine o'clock at night. Ordinarily Fuhs for this sort of work carried a hand flashlight lamp, which was his own personal property. He could use a 300 watt electric lamp bulb attached to an extension cord fifty or sixty feet long, which bulb and cord was supplied by the Company. It appears that on the night in question the bulb had either burned out or had been broken the night before. There was no bulb in stock on the job which would fit this lamp socket which was attached to the

extension cord. On the night of the accident the employee's wife was ill and he left the flashlight lamp at home. When he had partially filled the tank through the use of a handpump and hose inserted in the filling opening of the tractor, in order to prevent the fluid from running over and thus spilling the fuel for the machine, he climbed up on it and lit a match to see how nearly full the tank was. Thereupon the explosion occurred, causing first, second and third degree burns on his entire face and neck.

It seems that there was an iron measuring rod with graded notches and numbers on it supplied with the machine to insert in the tank to enable a workman engaged in filling it to determine how nearly full the tank was. However, the fuel used was so clear that this rod could not be read without a light, and as Fuhs testified, "It is hard to read in the daytime." He also stated that when the fuel was on the rod, the rod and the fuel were nearly "the same color."

The employee had reported to the Company's supervisor in charge of the work that the electric lamp on the extension cord aforesaid was broken due to the rain. The bulb had, as already indicated, broken the night before the accident and the following morning the employee reported it to the supervisor aforesaid of the Company.

The employee knew that gasoline fuel was dangerous and subject to explosion but did not know that Diesel fuel was. He had never before lighted a match and, as was done in this instance, placed it about six inches above the tank in his effort to determine how full it was, but he had seen others do it previously, even when the fuel was agitated and the tank had just been partly filled. Under such circumstances, as he observed the procedure and so testified, no trouble ensued. He also stated that he could see where the fuel was in the tank by holding the match as he did on this occasion. It did

not occur to him to use the regular gauge rod mentioned above and determine the depth of the fuel in the tank by feeling it with his fingers. But, as the supervisor of the Company testified, the workman could not have felt the notches of the rod in this manner. It seems the Company's supervisor aforesaid never told the employee that the Diesel fuel which was being used on the job was dangerous.

There were also three 100 watt electric house lamps operating within fifty feet of where the tractor stood, being located about twenty feet apart. Fuhs told the trial court that he could just see where to put the fuel in the tank and that was about all, i. e., he could just see where the hose attached to the hand barrel pump should properly go. He testified that he could have driven the machine over to where the three lamps were, but then he would have been obliged to have driven it back, and he could just barely drive a caterpillar tractor; if he had had the light on the extension cord aforesaid he would not have needed the flashlight for fueling work; ordinarily he always used his flashlight as it saved time in taking the cord over to the machine. The three 100 watt lamps mentioned above were for the purpose of furnishing light for the grease work to be done on these machines.

It is apparent from the constitutional clause and the several provisions of our state law enacted pursuant thereto and excerpted as above, that the accident which places the employee beyond the pale of the law for the purposes of making awards must be due *solely* to the "culpable negligence" of the injured employee, and also, when the law is applicable to him, reasonable bills for medical and hospital services are allowable and chargeable to the several accounts of employers.

In the Company's argument and in its brief stress appears to be laid upon the words "culpable negligence" only, for we find it there said: "To determine what

'culpable negligence' means is the sole question here before the court." We find ourselves unable to agree with this statement. The language of both our constitutional and statutory law alike forbid us to reach such a result and our prior decisions do likewise.

In Hotelling v. Fargo-Western Oil Company, 33 Wyo. 240, 238 P. 542, this court pointed out that:

"Whatever the degree or kind of negligence meant to be designated, it is clear that the right to compensation should not be denied unless the injury was due solely to the negligence of the workman whose injury or death is the basis of the claim. * * * *

"The claim cannot be disallowed under our law on the ground of the culpable negligence of the workman unless such negligence was the sole cause of the injury."

This statement of the law was reiterated in our case of Karos v. Ocenas, 34 Wyo. 357, 243 P. 593, thus:

"Before an award can be refused on the ground of the workman's negligence it must appear by a preponderance of the evidence that the injury was 'due solely' to his 'culpable negligence.' "

These cases would appear, through the legal principle announced, to rule the matter at bar.

Counsel for the Company would seem to have overlooked the fundamental ideas which induced the adoption of the provisions of law quoted above. When the constitutionality of the Workmen's Compensation Act of our State was adopted shortly after its passage, in Zancanelli v. Central Coal & Coke Co., 25 Wyo. 511, 173 P. 981, this court in upholding the law indicated that the Act

"is not intended to give compensation as damages, but is more in the nature of accident insurance. Accident insurance companies pay a certain fixed compensation per week on account of a certain premium paid and a certain sum in accord with a fixed schedule for loss of leg, arm, etc., or upon accidental death, and there is no question of the amount in accordance with expectancy

of life or prospective earning power. In adopting the new system both employes and employers gave up something that they each might gain something else, and it was in the nature of a compromise; as was said in Stertz v. Indus. Insur. Comm., 91 Wash. 588, 590, 158 Pac. 256, 258:

" 'Our act came of a great compromise between employers and employed. Both had suffered under the old system; the employers by heavy judgments of which half was opposing lawyers' booty; the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in future, where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it.' "

This statement was followed in Mr. Justice Blydenburgh's opinion in the Zancanelli case by a quotation from what was said by the Supreme Court of the United States in Mountain Timber Company v. State of Washington, 243 U. S. 219, 227, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D 642, concerning the insurance features of the Washington statute, as follows:

" 'The act in effect puts these hazardous occupations in the category of dangerous agencies, and requires that the losses shall be reckoned as a part of the cost of the industry, just like the pay roll, the repair account, or any other item of cost. The plan of assessment insurance is closely followed, and none more just has been suggested as a means of distributing the risk and burden of losses that inevitably must occur, in spite of any care that may be taken to prevent them.' "

In this connection also there may be mentioned the statement of 71 C. J. 234-235, made on the authority of many cited decisions, reading in part:

"The liability and the right to recover created by the compensation acts have no reference to fault generally, * * * * nor is compensation withheld because of fault

on the part of the employee, except where the act provides that an injury due solely to the culpable negligence of the employee is not compensable, or of a fellow servant."

As decisions announcing the principle referred to in the text just quoted see Benson v. Bush, 104 Kan. 198, 178 P. 747, where an employee was allowed compensation for injuries resulting from the explosion of a can of gasoline which he used to start a fire; Bubis v. Flockhart Foundry Company, 15 N. J. M. 299, 191 A. 281, and Kolaszynski v. Klie, 91 N. J. L. 37, 102 A. 5, in which awards were upheld where the employees used gasoline and wood alcohol to start fires.

Most of the compensation acts of the several states of the Union instead of the words "culpable negligence" use the words "wilful negligence" or "wilful misconduct," patterning the laws after the English Act. Under statutes of this type awards have been granted where the employee ran a gasoline motor in a closed garage, Struve v. City of Fremont, 125 Neb. 463, 250 N. W. 663; and in Western Pacific Railroad Company v. Industrial Accident Commission of California, 180 Cal. 416, 181 P. 787, an award was sustained though the employee violated an express direction of the employer that he should not clean moving machinery. It is not necessary to supply additional authorities along this line though many could be furnished.

We fear also that counsel has forgotten that this court has said in the case of Pope v. Safeway Stores, Inc., 54 Wyo. 266, 92 P. (2d) 58,

"It is proper to recall that in common with other appellate courts of the nation, this court has repeatedly held that the Workmen's Compensation Law of this State should be liberally and reasonably construed to protect persons suffering casualties in industry and to avoid incongruous results. See In re McConnell, 45 Wyo. 289, 18 P. 2d, 629, 88 A. L. R. 376; Koprowski v. Megeath Coal Co., 48 Wyo. 334, 46 P. 2d 61; Pero v.

Collier-Latimer, Inc., 49 Wyo. 131, 52 P. 2d 690; Baldwin v. Scullion, 50 Wyo. 508, 62 P. 2d 531, 108 A. L. R. 304; Fox Park Timber Co. v. Baker, 53 Wyo. 467, 84 P. 2d 736, 120 A. L. R. 1020."

When the legal principles announced by the authorities above cited are taken together with the well known rule of appellate procedure that where there is substantial evidence to support the finding of the trier of fact, especially where the evidence is conflicting, as it would appear to be in the case at bar in certain respects, we cannot say that the district court of Albany County was mistaken in its ruling establishing the award in question.

The word "culpable" is a strong term. Its "primary meaning was criminal, that is deserving of punishment," referring to the Latin derivation of the word, 25 C. J. S. 22.

Our statute defining the crime of manslaughter provides in part:

"Whoever unlawfully kills any human being without malice expressed or implied, either voluntarily upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by *any culpable neglect* or criminal carelessness, is guilty of manslaughter, * * * *."

In People v. Angelo, 246 N. Y. 451, 159 N. E. 394, Judge Andrews discussing the words "culpable negligence" as used in the New York statute (Section 1052 Penal Code), defining manslaughter "in the second degree," in the course of his opinion said:

" 'Culpable' has been defined as 'guilty, criminal, deserving punishment or condemnation', and more mildly as 'deserving blame or censure, blameworthy'. (Oxford Dictionary.) It may be said that any negligence resulting in injury to another is blameworthy. Were this the meaning of the Legislature the use of the adjective is superfluous. In truth, however, our criminal law has

an historic background. Criminal negligence is no new invention. We did not first use the word culpable."

This statement is followed by an exhaustive and able review of the preceding history of the word "culpable". The learned jurist went on to say that:

" 'Culpable' negligence is therefore something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to the hundreds of varying circumstances that may arise, can be given."

See also People v. Biocchio, 259 App. Div. 267, 18 N. Y. Supp. (2d) 786; State v. McComb, 33 Wyo. 346, 239 P. 526.

The word "culpable", therefore, when united with the word "negligence" should be deemed to mean something more than negligence alone for the latter is certainly generally regarded as blamable or deserving of censure. It would, therefore, seem that when the word "culpable" was joined with the word "negligence" it may very well be concluded that something more than negligence alone was intended. Consequently when we find a union of the two words set forth in our Workmen's Compensation law, they may sensibly be held to have a meaning practically the same as the phraseology of the English Act or most American Acts, which employ the English statute as their model in the use of the terms used in this connection, as we have already mentioned above, although we are aware that modern usage has modified or softened somewhat the meaning of the word "culpable" to that of "blameworthy". 25 C. J. S. 22, supra. Notwithstanding that, it may well be that our Legislature and the people of the State in framing the constitutional amendment aforesaid had in mind when they coupled the two words "culpable" and "negligence" a meaning more like the primary sig-

nificance of the word as mentioned above. Under this view, we think the award in question was proper.

But even if we assume for the purposes of argument that the accident was due to the "culpable negligence" of the employee, whatever these words which we have thus enclosed in quotation marks may in fact mean as used in our State Constitution and statutory law above quoted, in doing what he did, we certainly cannot say that the district court was in error in deciding that what he did was not the sole or only cause of the accident  The trial court could very well have adopted the view that the failure of the Company to provide a proper electric bulb for the extension cord after having been notified through its supervisor that there was no bulb in the extension cord socket, and the Company's failure to notify the workman that Diesel fuel was dangerous under certain conditions were sources of causation of the accident, as well as the action of the employee with the match in doing what he had seen done by others theretofore without any injurious results.

We accordingly are obliged to affirm the order of award made by the district court of Albany County and the proper order to that effect will be entered here.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.