**COTTONWOOD STEEL CORPORATION, a Utah Corporation; Scott L. Bracken, Appellants (Defendants),**

**Claudette Olson and Laurel Olson, (Plaintiffs),**

**Marie J. Hansen, the personal representative of the Estate of Erik Bundgaard Hansen, (Defendant),**

**Federal Resources Corporation, American Nuclear Corporation and Federal American Partners, a Wyoming co-partnership, (Defendants),**

**Gail L. Lucas, as Personal Representative for the Estate of Martin Floyd Lucas, deceased, (Plaintiff),**

**Mary Arima, as Personal Representative for the Estate of Jack K. Arima, deceased, (Plaintiff),**

**v.**

**Marie HANSEN, Personal Representative and Administratrix of the Estate of Erik Hansen, deceased, Appellee (Plaintiff).**

No. 5715.

Supreme Court of Wyoming.

Dec. 21, 1982.

W.W. Reeves, of Vlastos, Reeves & Murdock, P.C., Casper, for appellants.

James W. Owens, of Murane & Bostwick, Casper, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

As a result of a two-vehicle accident which occurred between the workplace of the occupants of the workers' vehicle and their home town of Riverton, suits were filed by the injured passengers and representatives of the deceased passengers of the automobile which was driven by Erik Hansen, the workers' driver.[1] The complaints were lodged against the estate of Hansen, Cottonwood Steel Corporation and its employee, Scott Bracken, who was driving the other vehicle. Suit was also filed against Federal Resources Corporation, American Nuclear Corporation and Federal American Partners but these companies are not parties to this appeal. Hansen and his passengers were co-employees at Pathfinder Mines Corporation and worker's compensation benefits had been paid to the survivors of Hansen and his two deceased passengers. Pathfinder paid a "daily vehicle maintenance allowance" to each of its employees in an amount determined by the distance between their residence and the mine where they worked. Cottonwood and Bracken settled these cases and obtained releases in their favor and in favor of their co-defendants, including Hansen's estate.

---

1. Claudette Olson and Laurel Olson, who were plaintiffs in district court action No. 20348 were injured in the accident. Martin Lucas was killed, and his personal representative was plaintiff in district court action No. 20518. Jack Arima was killed, and his personal representative was plaintiff in district court action No. 20519. Roger Lucas was uninjured.

In each of the three suits brought against the Hansen estate on behalf of the injured passengers and the survivors of Hansen's fellow workers, Hansen's personal representative pleaded that Hansen, and, therefore, his estate was immune from suit under the co-employee immunity provisions of the worker's compensation law, namely, § 27–12–103(a), W.S.1977,[2] and for the further reason that Hansen was not "culpably negligent" at the time of the accident. This same position was taken in the Hansen estate's motion for summary judgment.

Cottonwood Steel and Scott Bracken responded with their own motion for partial summary judgment, averring that, under our holding in *Beard v. Brown*, Wyo., 616 P.2d 726 (1980), when the collision occurred, Hansen, being en route to his home from the workplace, was not in the "scope of * * [his] employment" as that term is contemplated by the immunity provisions of § 27–12–103(a), supra. It follows, the appellants say, that Hansen's estate was not immune from suit in tort by his co-employees and that ordinary negligence was the appellant's only proof responsibility. Cottonwood and Bracken go on to argue that the injuries and deaths suffered by the occu-

pants of the Hansen vehicle could well be compensable under § 27–12–102(a)(xii), W.S.1977,[3] because, at the time of the collision, it was possible for them to have been within the "course of [their] employment," while Hansen, who was the driver of the vehicle, was, nonetheless, not then within the "scope of * * * [his] employment" under the immunity provisions of § 27–12–103(a), supra n. 2.

At the pre-trial conference, the court entered its order in which it was decided that " * * * § 27–12–103(a) is unconstitutional to the extent that it requires proof of culpable neglect as a prerequisite to recovery against a co-employee."

Thereafter, Cottonwood and Bracken consummated settlements and all claims were dismissed with prejudice. They were then granted leave to amend their counterclaims against Hansen's estate in order to allege first that the settlements had been made, second that Cottonwood had paid more than its pro rata share of the common liability and third that contribution by the Hansen estate should be ordered by the court under the auspices of the contribution among joint tort-feasors statute, § 1–1–110, W.S.1977.[4]

**2.** Section 27–12–103(a), W.S.1977 provides:

"(a) The rights and remedies provided in this act [§§ 27–12–101 to 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, *or his employees acting within the scope of their employment* unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person." (Emphasis added.)

**3.** Definitions § 27–12–102(a)(xii), W.S.1977, having to do with compensable injuries, reads:

" 'Injury' means any harmful change in the human organism other than normal aging, and includes damage to or loss of a prosthetic appliance and death, arising out of and *in the course of employment* while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. The term does not include:

"(A) Any communicable disease unless the risk of contracting the disease is increased by the nature of the employment;

"(B) Injury caused by an employee's intoxication or by his willful intention to injure or kill himself or another; or

"(C) Injury due solely to the culpable negligence of the injured employee;" (Emphasis added.)

**4.** The relevant parts of § 1–1–110, W.S.1977 are:

"Right to contribution among joint tort-feasors.

"(a) Except as otherwise provided in W.S. 1–1–110 through 1–1–113, where two (2) or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

"(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make

Following the opinion of this court in *Meyer v. Kendig,* Wyo., 641 P.2d 1235 (1982), which held that § 27–12–103(a) is constitutional,[5] Hansen's personal representative renewed her motion for summary judgment, alleging the protection of the statute.

By agreement of the parties, the court took into account the settlements as well as the relevant worker's compensation files in which the survivors of Hansen and the survivors of the two deceased passengers had applied for and received worker's compensation benefits. Having previously found in the worker's compensation cases that Hansen was not culpably negligent, the court granted a summary judgment in favor of the Hansen estate. The effect of the judgment is to hold that at the time of the collision Hansen was in the "scope of * * * [his] employment," as that term is employed in § 27–12–103(a), supra, and Hansen's estate was therefore immune from suits by Hansen's passengers and the representatives of the estates of deceased passengers—and any parties who stood in their shoes.

We will affirm.

## THE ISSUE

The sole question in this appeal asks whether the court erred in holding that, as a matter of law, the estate of Hansen was immune from suit by his fellow passengers and their estates under § 27–12–103(a), supra n. 2, thus foreclosing Bracken and Cot-tonwood's right to contribution under § 1–1–110, supra n. 4.

Given the concession of all litigants that Cottonwood and Bracken—with respect to their claims for contribution against the estate of Hansen—stand in the shoes of the co-employee passengers of Hansen, and given the admission that "culpable negligence" is not relied upon by the appellants (two admissions of fact which, for purposes of this opinion, we consider to be the law of the case), we hold that § 27–12–103(a), W.S.1977 clothes Hansen's estate with absolute immunity.[6]

## THE LAW

At the outset, it must be understood that the appellants Cottonwood and Bracken concede:

"* * * that if the provisions of § 27–12–103(a), *W.S. (1977)* were a bar to the passengers' suit against Hansen, then they also operate to bar contribution claims for amounts paid to the passengers." (From the appellants' brief.)

The appellants then go on to identify the issue when they say:

"Hence, the very simple issue is whether Hansen could have defeated the suits brought against him by his passengers on the grounds that he was within the scope of his employment [7] at the time of the accident and that he was not culpably negligent. *That is to say, does this defense apply to workmen who are com-*

contribution beyond his own pro rata share of the entire liability."

5. The author of this opinion agreed with District Judge O'Brien in *Meyer v. Kendig* and agrees with District Judge Ranck in this case, according to reasoning which holds that the worker's compensation constitutional amendment *to* Art. 10, § 4 of the Wyoming Constitution did not authorize the enactment of a law which would restrict an employee's right to bring a negligence action against a fellow worker to only those cases where culpability could be proven. The majority of this court disagreed with us, however, and the law of this state is that the statute is constitutional.

6. The appellants do not complain about any ramification which might or might not flow from the fact that the finding of nonculpability

was made in a worker's compensation case in which appellants were not a party. Furthermore, appellants have chosen not to undertake the proof of culpability in any other forum. They explain that this option not to complain is a question of strategy with them. It is therefore conceded by the parties and assumed by this court that it is the law of the case that Hansen was not guilty of culpable conduct and that the propriety of this finding by the trial judge and its application to the issues here are not subject to review in this appeal.

7. Appellants' reference *to* "scope of his employment" speaks, of course, to the legislature's use of that term as it is contained in the immunity provisions of § 27–12–103(a), supra.

*muting home from work?"* (Emphasis added.) (From the appellants' brief.)

The appellants would have us answer this question in the negative according to the following reasoning:

"Cottonwood Steel and Bracken contend that in this case the distinction between the definition of *compensable injuries* on the one hand, [see § 27–12–102(a)(xii) ] and *'scope of employment,'* [see § 27–12–103(a) ] which is the key to determining when the immunity applies, must be maintained as was done in *Beard v. Brown,* 616 P.2d 726, 737 (Wyo.1980), where the Court repeatedly says that determining 'scope of employment' is an altogether different problem of proof from determining compensable injuries which are those '. . . arising out of and in the course of employment . . .' § 27–12–102(a)(xii), W.S. (1977)." (Emphasis added.) (From the appellants' brief.)

The appellants argue that it is consistent that the court could find that Hansen and his passengers were in the "course of employment" under § 27–12–102(a)(xii) and thus their injuries and deaths would be compensable, while at the same time finding Hansen not to be in the "scope of * * * [his] employment" under § 27–12–103(a), the immunity statute. If we were to hold with this reasoning, the effect would be to permit one covered employee to bring suit against his covered fellow employee for ordinary negligence notwithstanding the immunity provisions of the statute.

The appellee, on the other hand, contends that, except for culpable acts which are not at issue in this appeal, Hansen was in the "scope of * * * [his] employment" at the time of the collision and thus § 27–12–103(a), supra, furnishes Hansen's estate with absolute immunity from the claims of the passengers and the personal representative of the estates of Hansen's co-employees or any persons standing in their shoes. Therefore, argues the appellee, Hansen's estate cannot be jointly liable with Cottonwood and Bracken to the passengers and the estates of Hansen's fellow workers through the application of the joint tort-feasor contribution statute, § 1–1–110, supra n. 4.

We would describe the overriding issue in this appeal differently from the way the appellants have identified it. The question for our decision *actually* is: Does "scope of their employment" as that term is used in § 27–12–103(a), W.S.1977, Worker's Compensation Act, mean the same thing as or something different than it does when it is utilized in a negligence action where the plaintiff seeks to hold the employer vicariously liable through the doctrine of respondeat superior as was the case in *Beard v. Brown,* supra. We say this because in order for the appellants to make *Beard v. Brown* work for them, they must be able to show that the going-to-and-from-work "scope of their employment" concept means the same in a worker's compensation statute, (as the case at bar) as it does in a tort context. This is so because *Beard* posed a vicarious-liability respondeat-superior question while here we are concerned with the interpretation of a worker's compensation statute. To put it another way, the relevant question asks whether "course of employment" and "scope of their employment," as those terms are found in the Wyoming Worker's Compensation Act, have such a different meaning as will, under the going-to-and-from-work fact situation, bestow worker's compensation benefits upon employees because they are, on the one hand, found to have been injured while in the "course of employment" while foreclosing an alleged tort-feasor covered employee immunity from suit by his co-employee passengers for the reason that, while he was in the "course of [his] employment," he was, nevertheless, not in the "scope of * * * [his] employment" at the time of the accident.

In the days before and including *Markle v. Williamson,* Wyo., 518 P.2d 621 (1974), the law was that one employee could sue his fellow employee for ordinary negligence resulting in injury in the extrahazardous workplace where both were covered by worker's compensation and were employed by the same employer who was contributing to the worker's compensation fund in their

behalf. The reason this was possible was because the worker's compensation enabling statutes, enacted pursuant to the 1914 amendment to Art. 10, § 4 of the Wyoming Constitution, granted immunity from employee suits only to the contributing employer, while preserving the employees' common-law rights of action against all third parties, including co-employees. *Markle v. Williamson, supra.*

In 1975, and in response to the Markle decision,[8] the legislature extended the immunity to all but "grossly" negligent employees (Ch. 149, § 27–312(a), 1975 S.L. of Wyoming), and in 1977 the legislature, evidently feeling that the term "grossly negligent" did not adequately describe its intent to see to it that co-employee suits were limited to the narrow category of willful acts, substituted the word "culpably" for the word "grossly." It was in the Session Laws of 1975 that the terms "course of employment" and "scope of their employment" appeared on the worker's compensation laws for the first time. See Ch. 149, § 27–311(n) and § 27–312(a), 1975 S.L. of Wyoming.

We have said that the employee immunity amendments were adopted in response to what the legislature perceived to be the harm that would result in permitting co-employees to sue one another. *Meyer v. Kendig, supra.* Were we to hold in the case at bar that § 27–12–103(a) did not clothe the Hansen estate with immunity from suits by fellow workers, we would be doing the very thing this court said should *not* be done in the *Meyer v. Kendig* case. This is so because if we are forced to the decision that driver Hansen and his co-employee passengers were in the "course of [their] employment" (under § 27–12–102(a)(xii)) at the time of the accident and therefore they suffered compensable injuries when en route home from the workplace, but that Hansen was outside the "scope of * * * [his] employment" (under § 27–12–103(a)) and therefore not immune from fellow-employee passengers' claims, we would be condoning suits among covered employees with the residual consequence that, in any such litigation, the plaintiff would need to prove only ordinary negligence instead of culpable conduct. In *Meyer v. Kendig, supra,* where the constitutionality of the co-employee immunity amendment, § 27–12–103(a), was tested, we said:

"Given the basic thrust of the Worker's Compensation Act—speedy relief for the worker for work-related injuries without the difficulty, expense and delays of litigation, *Stephenson v. Mitchell* [569 P.2d 95], supra,—*it would seem incongruous to make the same worker liable for his ordinary negligent acts during employment. Such a penalty would not only result in a work place of questionable harmony and in hundreds of legal actions, but it would subject the Worker's Compensation Act to a doubtful future.*" (Emphasis added.) 641 P.2d at 1239.

We went on to say:

"Section 27–12–103(a) *operates alike on all employees in the same circumstances and conditions.* The classification is reasonable in view of the object to be obtained—harmony among employees, the maintenance of a sound worker's compensation fund, and the overall purpose and philosophy behind the Worker's Compensation Act. *Ludwig v. Harston,* 65 Wyo. 134, 197 P.2d 252 (1948); *May v. City of Laramie,* 58 Wyo. 240, 131 P.2d 300 (1942); *Bazley v. Tortorich,* La., 397 So.2d 475 (1981). *To penalize the employee by making him liable for his ordinary negligent acts is inconsistent with the purpose of worker's compensation acts, i.e., such purpose is to abolish the common-law system relating to injuries to employees as*

---

8. The appellants acknowledge that immunity which had previously been enjoyed by only the contributing employer was extended to the tort-feasor co-employee in response to Markle when they say in their brief:

"The background of this controversy is well-known. In the first legislative session after *Markle v. Williamson, supra,* the Wyoming Legislature, following a pattern which had been established by legislatures in other states under the same circumstances, enacted the form of limited immunity from co-employee suits which is here under consideration."

inadequate to meet modern conditions and conceptions of moral obligations * * *." (Emphasis added.) 641 P.2d at 1240.

We have held, therefore, that given the immunity provisions of the Worker's Compensation Act, an ordinary negligence standard in tort claims between covered co-employees would be incompatible with the legislative purpose of the act which is "to abolish the common-law system relating to injuries to employees," *Meyer v. Kendig,* supra. Even so, the appellants argue that Hansen should be found not to have been in the "scope of * * * [his] employment," thus permitting suit by covered co-employees against his estate with its attendant ordinary-negligence standard of proof. This concept is sought to be buttressed with prior case authority (*Beard v. Brown,* Wyo., 616 P.2d 726 (1980)), where we drew a distinction between the concept of "scope of employment" in tort and the term "scope of their employment" as it appears in a worker's compensation statute. It is this authority that the appellants perceive to be supportive of their theory here. We cannot agree.

## SCOPE OF EMPLOYMENT IN TORT AND IN WORKER'S COMPENSATION

▮ As we have said, even though worker's compensation awards have been made to the survivors of the deceased occupants of the Hansen vehicle, appellants would have us hold that, while the occupants of that automobile may have been in the "course of employment" at the time of the accident for purposes of identifying compensable injury under § 27–12–102(a)(xii), the driver Hansen was not himself in the "scope of * * * [his] employment" under § 27–12–103(a) for purposes of granting his estate immunity from suit.

This position is untenable.

▮ We will readily agree that at the time of the accident all of the occupants of the Hansen vehicle were within the "course of [their] employment" because they were being paid travel expenses by their employer, and, under this court's precedent (*In the Matter of Willey,* Wyo., 571 P.2d 248 (1977)), the district judge could and evidently did conclude that this payment was a part of the employment contract. The record shows that Hansen had five passengers in his car that day. They all paid him $6.00 per day in exchange for their ride to and from work from their homes in Riverton. Pathfinder paid a daily vehicle maintenance allowance to each of its employees in an amount that was determined by the distance of their residence from the mine. Employees who lived in Riverton were paid $7.00 per day.

In *In the Matter of Willey,* supra, where the worker's compensation claim arose out of an accident that occurred when the employees were en route to the site of their employment at a mine some miles from Gillette, we had the forerunner to § 27–12–102(a)(xii) under consideration—to wit, § 27–311(n), W.S.1957, 1975 Cum.Supp. The injured and the deceased in *Willey* received $12.00 per day, in addition to their normal wages, for traveling to and from work. In holding the injury and death compensable, we said:

"Although the language contained in § 27–311(n), supra, is somewhat different from that contained in its predecessor, the meaning has remained the same. The provision acknowledges that injuries may occur *on or off* the premises of the employer. In either case, the injury is compensable if it arises out of and in the *course of employment.* This requirement emphasizes the need for a causal connection between the injury and the employment. Such a causal connection is supplied when there is a nexus between the injury and some condition, activity, environment or requirement of the employment. *Parrott v. Industrial Commission of Ohio,* 145 Ohio St. 66, 60 N.E.2d 660. See, *Standard Oil Co. v. Smith,* 56 Wyo. 537, 111 P.2d 132; *In re Jensen* [63 Wyo. 88, 178 P.2d 897], supra; *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Boston,* Wyo., 445 P.2d 548. Cf., *White Ditching Company*

*v. Giddeon,* Wyo., 413 P.2d 45. It is this requirement, and only this requirement, which is envisioned by the language contained in § 27–311(n), supra.

"This court subscribes to the almost universal rule that generally injuries sustained by an employee who is 'going to or coming from' the duties of his employment are not covered by worker's compensation. *In re Jensen,* supra. In fact, this rule was a part of the statutory definition of 'injury' until the recodification of the worker's compensation laws in 1975. Chapter 149, § 1, Session Laws of Wyoming 1975. *An exception to the rule, which is particularly applicable to the instant case, was also recognized in Jensen where we said:*

"'... *[W]hen other circumstances are injected such as where the employer himself as a part of the employment arrangement supplies transportation to and from the place where the duties of the employee actually commence, an exception to the general rule arises and a different result ensues.'* 178 P.2d at 900.

"In *In re Jensen* we approved the application of this exception to injuries sustained in a motor vehicle accident by employees who drove their own cars to and from an oil-well site and were reimbursed by the employer on a mileage basis for the distance driven." (Emphasis added.) 571 P.2d at 250–251.

In *Willey,* we went on to hold that the facts and the law of that case supported the judge's conclusion that the travel arrangements were a part of the employment agreement and that the injured and deceased were within the "course of [their] employment" at the time of the accident, thus rendering the injury and death compensable under the Worker's Compensation Act.

But appellants say: Granted, when Hansen and his occupants were en route from the workplace to their homes with travel pay being a part of their employment arrangement, they were in the "course of [their] employment" for purposes of deciding whether their injuries were compensable; still, when it comes to ascertaining whether Hansen's estate was immune from all but his culpable acts, Hansen was *not* within the "scope of * * * [his] employment" according to the holding of this court in *Beard v. Brown,* 616 P.2d at 737. Therefore, conclude the appellants, the Hansen estate does not enjoy the immunity and culpable-negligence requirement of the worker's compensation law.

The facts in *Beard v. Brown,* supra, show that the collision occurred on driver Beard's side of the road in an impact with driver Buller. Buller's passenger Napier was killed and this estate was represented by Brown. Buller worked for Frailey as a clerk in the office, and, with her passenger Napier, was on the way home from work when the accident happened. Beard was employed by Champlin and was in the scope of his employment at the time of the collision so there is no question about the vicarious liability of Champlin.

Brown, for the estate of Napier, sued both drivers for their separate acts of negligence and he sued their employers under the doctrine of respondeat superior. It can thus be seen that the worker's compensation law was not a factor in this litigation. Frailey defended on the theory that at the time of the accident Buller was not within the scope of her employment and therefore the doctrine of respondeat superior was not applicable in such a way as would make him liable to Brown. Brown answered this contention averring that Buller was within the scope of employment because she received two extra hours of pay for driving to and from work. The jury found Buller to be within the scope of her employment at the time of the accident. We reversed, and held as a matter of law that at the time of the accident Buller was not within the scope of her employment and that Frailey was therefore not liable under the doctrine of respondeat superior.

In order to grasp the distinction that we will make between *Beard v. Brown* and the case at bar, it is important to keep in mind that Beard presents a tort question and in

no way concerns itself with employer or employee immunity under the Worker's Compensation Act, while the case with which we are concerned in this appeal presents an exercise in interpreting a worker's compensation statute. In *Beard,* we were asked to decide whether, under applicable tort law, the employee was, when going home from the workplace, furthering the interests and subject to the control of the employer to such a degree that the employer became vicariously liable for her negligent acts. Here, on the other hand, we are asked to decide, in a worker's compensation case, whether a covered driver of his covered passenger co-employees who is en route home from the work place is in the "scope of * * * [his] employment" as that term is employed in the co-employee immunity section of the worker's compensation law.

In *Beard v. Brown,* we very carefully distinguished between the meaning of the term "scope of employment" when used in the law of tort as compared to its employment in worker's compensation law. After referring to opinions from this court in which we held that a worker going to and from work will be held to be in the *"scope or course"* (emphasis added) of employment where the employer pays for the time consumed in this work-related activity,[9] we said, distinguishing Beard from this body of law:

> "The rule stated in the above citation is considerably broader than was necessary to accommodate the facts of the cases in which it has been used. In two of the above-cited cases, the employer was either active in arranging or providing transportation for an employee. By saying this, we do not intend to overrule or limit in any way the holdings of those cases. *It is sufficient to point out that they are all worker's compensation cases and, as such, their holdings are not generally applicable in the negligence area. To be injured within the course or scope of one's employment in the context of the*

> *worker's compensation system is not the same thing as to be in the course or scope of one's employment and cause injury to a third person who is foreign to the employee-employer relationship, which is the foundation of worker's compensation system. Worker's compensation is a creature of statute and one designed especially to protect workers injured in the course of their work. The statute is liberally construed to provide coverage to the worker. Within the context of the statute, the employer has a special duty vis-a-vis the employees who work for him.* Under worker's compensation, an employee is covered for injuries which arise ' * * * out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer, incurred while at work in places where the employer's business requires an employee's presence * *,' § 27–12–102(a)(xii), W.S.1977. This states a problem of proof different from that which is encountered in the negligence area.

> "*The rule which we have adopted for worker's compensation cases cannot be applied to a negligence case. Our general negligence theory is one based on fault—worker's compensation and many other statutory schemes are of a no-fault nature. Within the general negligence sphere, the rules regarding 'scope of employment' are somewhat different. This is so for a number of reasons. A liberal statute designed to benefit workers is not involved. There is no special relationship giving rise to a special duty as in worker's compensation. There is no sound reason for finding liability without fault for social or economic reasons.*

> "The Arizona Supreme Court recently addressed this question:

>> " ' * * * [T]he going and coming rule was largely judicially developed in order to provide compensation to workmen for injuries which were incurred

**9.** See these following opinions: *In re Jensen,* 63 Wyo. 88, 178 P.2d 897, 900 (1947); *Wyoming State Treasurer, ex rel. Workmen's Compensation Department v. Boston,* Wyo., 445 P.2d 548 (1968); *Matter of Willey,* Wyo., 571 P.2d 248, 250–252 (1977).

while within the range of dangers associated with their employer's premises. There can therefore be no reason to apply it to a situation where the recipient of the benefits of the rule is not an injured workman.' *Driscoll v. Harmon,* 1979, 124 Ariz. 15, 601 P.2d 1051, 1052.

"We agree with this reasoning.

"The rule as regards 'scope of employment' in the general negligence sphere is that set out in *Miller v. Reiman-Wuerth Co.* [598 P.2d 20], supra, i.e., there must be some direct benefit to the employer and the employer must exercise some control over the employee. Buller was in no different status than her two passengers who were likewise being paid and doing nothing but being carried to the place where they too would commence the duties for which they were employed. To the extent that rule is inconsistent with the worker's compensation rule, the inconsistency is explainable, sound, and well-grounded as discussed above." (Emphasis added.) 616 P.2d at 736–737.

From this quote from *Beard v. Brown* it should be clear to all that we were distinguishing "scope of employment" in the area of tort from "course *or* scope" of employment in the worker's compensation context. It should also be noted in *Beard* that the terms "course of employment" and "scope of employment" are used interchangeably when alluding to the liberal interpretation rules of worker's compensation law. We do not differentiate in *Beard* between the words "scope" on the one hand and "course" on the other. "Course *or* scope" is the language we use. We considered that, for worker's compensation purposes, these terms are interchangeable. In other words, they mean the same thing. This being our intention, it follows that the distinction that the appellants urge is without merit. That is, we do not, for purposes of the worker's compensation law, distinguish between the meaning of "scope of their employment" as it appears in the immunity section, § 27–12–103(a), supra n. 2, and "course of employment" as it appears in § 27–12–102(a)(xii), supra n. 3, which is the definition of compensable injuries section of the

Act. To make such a distinction would lead to the incongruous holding which would say that, under the facts of this case, the workers were, when returning home from work, within the "course of their employment" for the purpose of granting worker's compensation benefits for their injuries and deaths, but the covered driver was *not,* at that time, within the "scope of * * * [his] employment" for the purpose of furnishing § 27–12–103(a) immunity to his estate from suit by covered passenger co-employees.

■ This leaves us to reach the following conclusion: The case at bar, being a worker's compensation case, cannot be resolved by holding the term "scope of * * * [his] employment" to have the same meaning that we said it had in *Beard v. Brown,* supra, which was a tort case. The meaning of that term is different when it is used in the worker's compensation statute than it is when employed in the law of tort.

We tried to emphasize this in *Beard* when discussing the question relating to whether one was or was not in the *"course or scope"* (emphasis added) of his or her employment in the worker's compensation context, when we said, as indicated above, that we would liberally construe the statute to afford coverage to the worker but, in tort law, the

"* * * rules regarding 'scope of employment' are somewhat different. This is so * * * [because a] * * * liberal statute designed to benefit workers is not involved." 616 P.2d at 737.

We then went on to say, as indicated above, that

"* * * the general negligence sphere is that set out in *Miller v. Reiman-Wuerth Co.,* supra, i.e., there must be some direct benefit to the employer and the employer must exercise some control over the employee." 616 P.2d at 737.

There is still another and equally important reason for our affirming the trial court. We view § 27–12–103(a) to be just exactly what it purports to be—an immunity statute. Before *Markle,* the only person immune from suit by the injured employee was the contributing employer. *Markle v.*

*Williamson,* supra. This immunity was then extended to all co-employees whose acts were not the result of culpable conduct. This limited immunity is set in concrete even as is the immunity of the employer. We do not believe that it was the intention of the legislature to grant immunity from tort liability to the offending covered employee on the one hand, while on the other hand taking it away by causing that employee to be responsible in damages to his covered co-employees and third-party tortfeasors. We do not intend to insert fault concepts into the worker's compensation law unless we perceive this course to be clearly and unequivocally mandated by legislative directive.

■　　The amendment to Art. 10, § 4 of the Wyoming Constitution [10] and subsequent enabling legislation did not contemplate that tort law would hold any office in the Worker's Compensation Act except that the employer could defend against claims of the injured employee on the grounds that he or she was culpably negligent. Soon after the amendment to Art. 10, § 4 of the Wyoming Constitution, this court said that the Wyoming worker's compensation scheme was in the nature of an industrial-accident policy. *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981 (1918). See: *Hotelling v. Fargo-Western Oil Co.,* 33 Wyo. 240, 238 P. 542 (1925); *In re Byrne,* 53 Wyo. 519, 86 P.2d 1095, 1101 (1939); and *Fuhs v. Swenson,* 58 Wyo. 293, 131 P.2d 333, 337 (1942). See also *Markle v. Williamson,* supra, where we said:

**10.** Article 10, § 4, before the amendment, provided:
"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void."
The amendment of 1914 provided:
"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accu-

"To say that workmen's compensation in Wyoming is in the nature of insurance is to say it stems from contract. Indeed, the clear implication in *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981, 989, is that our Workmen's Compensation Act is in contract and not in tort." 518 P.2d at 624.

We have never changed our minds about that proposition. Sometimes we have had trouble keeping tort concepts out of the worker's compensation law, *Stephenson v. Mitchell,* Wyo., 569 P.2d 95 (1977), and *Meyer v. Kendig,* supra, but we have never deviated from our adherence to the proposition that the worker's compensation law of this state is in the nature of industrial-accident insurance. In other words, the injured and the survivors of deceased workers who are covered by the Act are to receive compensation benefits whether or not, except for culpable acts, the injured or deceased worker was negligent. In *Zancanelli* we approved the opinion in *Jensen v. Southern Pacific Co.,* 215 N.Y. 514, 109 N.E. 600, L.R.A. 1916A, 403, Ann.Cas. 1916B, 276, where there the court said, speaking to an act similar to ours:

" ' * * * Both acts are said to have been based on the proposition that the risk of accidental injuries in a hazardous employment should be borne by the business, and that *loss should not fall on the injured employe and his dependents, who are unable to* bear it or to *protect themselves against it. * * *'* " (Emphasis added.) 173 P. at 989–990.

mulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death."

Given the industrial-accident insurance concept to which we have and still do liken our worker's compensation law, it would be incongruous indeed for us, at this late date, to hold that even though the injured and the estates of deceased co-employees are eligible for benefits under the worker's compensation law, and even though the statute provides that one employee cannot sue another in tort except for culpable acts, a tort-feasor can, nevertheless, through the contribution statute, inject common-law tort concepts into the law in such a way that widows and injured employees must contribute their savings and worker's compensation benefits in proportion to the amount of liability assigned to the injured or deceased. To so hold would be to say that we have exchanged our 65-year-old identification of the Act as being in the nature of an industrial-accident insurance policy in favor of a fault concept. This we will not do.

Hansen's estate is not subject to the contribution demands of Cottonwood under § 1–1–110, W.S.1977 since, for the reasons expressed herein, Hansen was incapable of becoming a joint tort-feasor with Cottonwood and Bracken.

Affirmed.

THOMAS, Justice, dissenting.

I cannot agree with either the result or the justification for that result which is encompassed in the majority opinion. It is my view that the decision of the majority unduly restricts the right of a passenger for hire to bring an action against his negligent driver. Because I find that to be an erroneous result under the law, as well as a bad result in terms of valid public policy considerations, I must voice my disapproval.

Most observers would agree that we now are living in a relatively complex society, and certainly it is much more complex than it was in the times of our fathers and grandfathers. In such a complex society relationships between parties may have more than one dimension, and in adjusting the rights of the parties that evolve from those relationships it behooves courts of law to carefully analyze the operative facts and adjust the rights of the parties in the context of the relationship which was being effectuated at the time the legal questions arose. See *Barnette v. The Hartford Insurance Group,* Wyo., 653 P.2d 1375 (1982). We should not insist that those who are employed by the same employer can only occupy the relationship of co-employees, but if, instead, their relationship has multiple facets, we must take the other facets into account and apply them when it is important to do so to adjust the rights of the parties.

I must ask, why is this not a tort case? What is present here which effectively serves to distinguish this case from any one of a number of others in which a driver is negligent, and his paying passengers are injured by that negligence? Can the case be distinguished simply because the driver and the passengers receive their paychecks from a common employer? I am persuaded that that is not a valid distinction nor should it be the basis for denial of the right of action by the passengers. The true relationship which existed between these parties at the time of the injuries was that of driver and passengers for hire.

This certainly is not the first instance in which a significant legal question comes to us in a perhaps unpalatable package. Recognizing that this case is one for contribution pursuant to our Wyoming Statutes (§§ 1–1–110 through 1–1–113, W.S.1977) by one tortfeasor, a corporation acting through its employee, against another tortfeasor, who is an individual, still the parties are in agreement that contribution is only available if the injured passengers could have brought an action against their driver. The decision will have its primary precedential value in those cases in which passengers seek to recover from drivers. The majority has chosen to apply the immunity provision found in our worker's compensation statute, § 27–12–103(a), W.S.1977, and to hold that because of this statute the injured passengers for hire cannot bring the action against their driver.

It is my judgment that the majority opinion applies the immunity provision too broadly, and in contravention of our oft-stated rule that statutes in derogation of the common law are to be narrowly and strictly construed. *Mahaney v. Hunter Enterprises, Inc.,* Wyo., 426 P.2d 442 (1967). "There is a pervading rule that valuable common law rights shall not be deemed destroyed by a statute except by clear language." *Markle v. Williamson,* Wyo., 518 P.2d 621, 623 (1974).

As part of its justification for the disposition of this case the majority holds that the words "scope of their employment" in § 27–12–103(a) are the same as and coterminous with the words "course of employment" found in § 27–12–102(a)(xii), W.S. 1977. The majority then endeavors to match this conclusion with the prior decision of this court in *Beard v. Brown,* Wyo., 616 P.2d 726 (1980). For me the effort of the majority does not succeed. *Beard v. Brown* holds that an employee who is traveling to and from the work site even though compensated for travel time is not within the "scope of his employment" while engaged in that function. When the result in this case is compared with *Beard v. Brown* we discover that the negligent driver is not within the scope of his employment (for purposes of the application of the doctrine of respondeat superior to his employer), but he is within the scope of his employment (when an action is brought against him by his paying passengers). I submit that it is illogical and confusing to find one engaging in a single activity while being not within and yet within the scope of his employment. The question of whether the employee is within the "course of employment" has been treated by this court historically as a separate and essentially unrelated matter. *H.K. Ferguson Company v. Willey,* Wyo., 571 P.2d 248 (1977); *Wyoming State Treasurer ex rel. Workmen's Compensation Department v. Boston,* Wyo., 445 P.2d 548 (1968); *White Ditching Company v. Giddeon,* Wyo., 413 P.2d 45 (1966); and *Jensen v. Manning & Brown,* 63 Wyo. 88, 178 P.2d 897 (1947).

Section 8–1–103, (a)(i), W.S.1977, states:

"Words and phrases shall be taken in their ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

The phrase "scope of their employment" does have a peculiar and appropriate meaning in law in Wyoming. *Beard v. Brown,* supra; *Combined Insurance Company of America v. Sinclair,* Wyo., 584 P.2d 1034 (1978); *Miller v. Reiman-Wuerth Company,* Wyo., 598 P.2d 20 (1979). I submit that under our Wyoming jurisprudence the legislature is presumed to have been aware of the difference between "course of employment" and "scope of employment," and to have used the latter phrase designedly in limiting the immunity statute. A word which has a well-settled meaning in law at the time of its usage in a statute will be so understood unless a different meaning is unmistakably intended. *Sorenson v. State,* Wyo., 604 P.2d 1031 (1979); *Johnson v. Safeway Stores, Inc.,* Wyo., 568 P.2d 908 (1977); *Title Guaranty Company of Wyoming v. Belt,* Wyo., 539 P.2d 357 (1975); and *School Districts Nos. 2, 3, 6, 9, and 10, in County of Campbell v. Cook,* Wyo., 424 P.2d 751 (1967). Statutes are presumed to be enacted with full knowledge on the part of the legislature of the existing state of the law and with reference thereto. *Brittain v. Booth,* Wyo., 601 P.2d 532 (1979); *White v. Board of Land Commissioners,* Wyo., 595 P.2d 76 (1979); *Brown v. State,* Wyo., 590 P.2d 1312 (1979); *DeHerrera v. Herrera,* Wyo., 565 P.2d 479 (1977); *Voss v. Ralston,* Wyo., 550 P.2d 481 (1976); and *Board of the County Commissioners of the County of Albany v. White,* 79 Wyo. 420, 335 P.2d 433 (1959). If the Wyoming Legislature had intended the words in the immunity provision of the worker's compensation statute to mean "course of employment" and to extend to the facts of this case, the legislature knew the right words to use.

Counsel for the appellant has very capably called to our attention the similarity in jurisprudential history between Wyoming and the State of California. In Wyoming

the extension of immunity to a fellow employee followed upon the decision of this court in *Markle v. Williamson,* supra. As the majority opinion outlines, the progression then was from gross negligence to culpable negligence as an exception to the immunity. A similar history is reflected in the State of California in the case of *Saala v. McFarland,* 63 Cal.2d 124, 45 Cal.Rptr. 144, 403 P.2d 400 (1965). I find the reasoning of the California court to be highly persuasive with respect to the conclusions to be drawn from this sequence of events, and it leaves me with my position that "scope of employment" for this purpose is different from "course of employment." I then would apply the former phrase in accordance with well-recognized principles of tort law. Other states, while criticized by Professor Larson (2A Larson, Workmen's Compensation Law, § 72.23 (1982)), have reached a similar conclusion. *Molino v. Asher,* 95 Nev. 33, 588 P.2d 1033 (1979), second appeal, 96 Nev. 814, 618 P.2d 878 (1980); *Williams v. Bebbington,* 247 S.C. 260, 146 S.E.2d 853 (1966); and *Ward v. Wright,* Tex.Civ.App., 490 S.W.2d 223 (1973). Such a result is entirely consistent with our policy of liberal construction of the worker's compensation statute in order to provide coverage under its provisions, and yet is equally consistent with our rule that statutes in derogation of the common law are to be strictly construed.

Furthermore, the result I espouse is consistent with the decision of this court in *Meyer v. Kendig,* Wyo., 641 P.2d 1235 (1981). The majority opinion quotes from *Meyer v. Kendig,* emphasizing language in favor of immunity. Whether the factors there related really can be espoused to justify immunity from action for injuries resulting from the negligence of a driver carrying other workers to and from their place of employment for compensation is problematical. Certainly the purposes there related to be served by the Worker's Compensation Act are not in any way furthered by insulating a driver such as Hansen from liability for negligent acts which he commits while carrying on his private profit-making activities. We must remem-

ber that in *Meyer v. Kendig,* supra, the issue was constitutionality of the statutory immunity; it clearly was factually applicable in that instance.

I harken back to *Nehring v. Russell,* Wyo., 582 P.2d 67 (1978), in which this court concluded that the Wyoming automobile guest statute violated the guaranty of uniform operation of laws established by § 34 of Art. 1 of the Constitution of the State of Wyoming. This was true, we said, because the statute discriminated between paying passengers and nonpaying passengers by barring the nonpaying passengers from suits for ordinary negligence. We stated that in so doing the guest statute exceeded all bounds of rationality and for that reason it constituted a denial of uniform operation under the Wyoming Constitution. Conceivably one of Hansen's passengers could have been employed by some other person or firm than Pathfinder Mines Corporation. Given that circumstance, how would we justify the right of one to sue while the other could not? To paraphrase what we said in *Nehring v. Russell,* supra, the immunity extended by the worker's compensation statute to a driver whose negligence injures his passenger does not bear a substantial nor rational. relation to the worker's compensation statute's ascribed purposes of speedy relief for work-related injuries, maintaining harmony in the work place, and avoiding a plethora of legal actions. I only note the deleterious rather than salutary effect upon the soundness of the Worker's Compensation Fund resulting from covering such injuries in favor of a tortfeasor who makes no payments into the fund in connection with his business of transporting passengers for hire.

In summary I am convinced that by calling a tort case a worker's compensation case we have reached a result that will lead to future injustices. The result is not necessary to further the philosophy and statutory purposes of the Worker's Compensation Fund. It is possible to recognize that the immunity provision would not extend to situations such as this without ignoring what I regard as the obvious intent of the legislature, and without creating confusion

with respect to the concept of "scope of employment." I pause to note that the majority opinion even bolsters its reasoning by suggesting that widows must contribute out of their worker's compensation benefits to payments imposed under the contribution statute. In light of the provisions of § 27–12–408, W.S.1977, that suggestion is erroneous and misleading. Furthermore, § 27–12–409, W.S.1977, provides a substantial protection for worker's compensation benefits paid to an injured workman, who is the driver in this instance, since he is the guilty party. However, attempting to muster sympathy for him may not be a fruitful endeavor.

I must confess a lack of capacity to engage in the intellectual gymnastics manifest in the majority opinion. I think these efforts are inappropriate when the result is simply a windfall to a negligent driver and his insurance carrier without in any way furthering the purposes of the worker's compensation system. I would reverse the district court in this case and would hold that the statute accommodates to a construction to the end that the negligent driver transporting his fellow employees to and from the work site is not within the scope of his employment, but instead is within the purview of his own profit-making activities, and therefore is not entitled to the benefit of the immunity provision in the statute. I would read the language from *Meyer v. Kendig,* supra, as limited to justifying the immunity in those situations in which the employees were working together in a common effort to further the business of their employer. I believe that is what worker's compensation deals with, and in my view it has very little, if anything, to do with the relationship here, which was that of driver and passenger for hire. This is a tort case in which there are incidental overtones of worker's compensation; it is not, as the majority holds, a worker's compensation case in which there has been some incidental tortious conduct.